UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:                                                    Case No. 13-13954-AJC

BANAH INTERNATIONAL GROUP,              Chapter 11
INC.

      The Debtor.
_____/

BANAH INTERNATIONAL GROUP, INC.      Adv. No. 14-01310-AJC

      Plaintiff,

vs.

NIRK MAGNATE HOLDING, CORP.,
A Florida Corporation, and JORGE MESA,
SR.

      Defendant(s).
_____/

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND DISMISS ACTION

### Introduction

Plaintiff, BANAH INTERNATIONAL GROUP, INC. (hereinafter "Banah") filed a six (6) count complaint (hereinafter "Adversary Complaint") against Defendants NIRK MAGNATE HOLDING CORP. (hereinafter "Nirk") and JORGE MESA, SR. (hereinafter "Mesa"), the president and principal of Nirk.

Banah alleges Defendants tortiously interfered with a contract between Banah and Akwa Agrochem Dmmc, a Dubai Company, UAE (hereinafter "Akwa") and with a letter of credit that Akwa had obtained from Mashreqbank PSC (hereinafter "Mashreq") (Counts I, II, IV & V, respectively) which was to be utilized to finance a transaction by which Akwa purchased sugar from Banah.[1]

In response to Banah's amended adversary complaint, Defendants have moved to compel arbitration of the instant adversary proceeding, pursuant to an arbitration provision contained in a certain Joint Venture Agreement ("JVA") entered into between Banah and Nirk.[2]  Alternatively, Defendants seek to dismiss the adversary complaint for failure to adequately plead Plaintiff's claim for tortious interference. Neither of these contentions is meritorious.  For the reasons which follow Defendant's demand for arbitration has been waived.

<u>Relevant Factual and Procedural History</u>

Nirk entered into a Joint Venture Agreement (hereinafter "JVA") with Banah, a copy of which is attached hereto as Exhibit "A."  The agreement stated as to its purpose:  "The purpose of this agreement is to produce, purchase, sales and market cane sugar in different types and forms.  And to carry any related activities

---

[1]    In Counts III and VI, Banah sought disallowance of any and all claims of Defendants against the Chapter 11 bankruptcy estate.  Subsequent to the filing of the instant adversary proceeding, this Court tentatively confirmed Banah's plan of reorganization in the Chapter 11 proceeding which included recognition of Mesa's claim and rejection of Nirk's claim, thereby mooting these counts.

[2]    Although Mesa did not sign the JVA, he too seeks to invoke the arbitration clause. Apparently this is an admission that the JVA is applicable to Mesa.

as may be necessary for the purpose of this agreement." JVA, p. 1. Nirk's

contractual responsibility under the JVA was to finance Banah's purchase of cane

sugar. JVA, p. 2. The JVA contained an arbitration clause which states:

> The parties shall make a good faith effort to resolve any
> and all potential disputes between them. All disputes
> which cannot be resolved within thirty calendar days
> following notice of such a dispute shall be resolved by
> arbitration under and pursuant to the rules of the
> American Arbitration Association. The laws of the
> jurisdiction of the state of Florida shall apply.

This clause applies to "all disputes and all potential disputes" thus making an

extremely broad arbitration clause.

Mesa, Nirk's principal, brought suit in state court against, *inter alia,* Banah.[3]

In the complaint in the State Court Action, Mesa alleged the following:

> 16.    On August 14, 2012, Mesa transferred $718,000 to
> BIG ("Banah International Group") via wire transfer in
> order to procure sugar from the Miami Free Zone....
> 17.    Initially, Mesa's investment of $718,000.00 was
> intended to be used to purchase sugar from Perez's
> purported contacts in Central and South America….
> 18.    Due to Perez's representations and purported
> expertise in the sugar industry, Mesa's investment of
> $718,000.00 was used to obtain sugar from the Miami
> Free Zone…
> 37.    On or about October 2, 2012, Mesa made two wire
> transfers to the account of BIG of $226,567.00 and
> $100,000.00. These wire transfers, totaling $326,567.00,

---

[3]    *George Mesa v. Alexander I. Perez, Banah International Group, et al*., Case Number 13-03854-CA, in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida (hereinafter the "State Court Action"). A copy of the complaint in the State Court Action is attached hereto as Exhibit "B."

> were specifically allocated for (1) the purchase of liquid
> sugar, product, equipment, cappers and bottles from
> suppliers, the cost of which was purported by Banah and
> Perez to be $211,567.00…

Mesa's claims against Banah included fraud, fraudulent inducement, money had and received, unjust enrichment and constructive trust. The damages sought by Mesa, in large part, consisted of the funds allegedly paid by Mesa to Banah for the purchase of sugar.[4]  Although not alleged by Mesa in his state court complaint, the funds paid by Mesa to Banah were advanced by Mesa in satisfaction of Nirk's obligations under the JVA.  These monies were only transferred to Banah pursuant to the parties' obligations under the JVA. Notwithstanding that the JVA was inextricably intertwined with Mesa's claims as set forth in the State Court Action, Mesa did not seek arbitration of his claims brought in the State Court Action.

Prior to filing an answer, Banah filed for Chapter 11 protection and the state court action was stayed as a result of the automatic stay.   Mesa and Nirk then separately filed the identical claim in the bankruptcy proceeding based upon the claims alleged by Mesa in the State Court Action.[5]   Mesa's claim was accepted to

---

[4]      It is impossible to discern from the attachments to the complaint in the State Court Action if the funds were paid by Nirk or Mesa.

[5]      In their Statement of Claim, both Mesa and Nirk attached a copy of the complaint in the State Court Action as setting forth the factual basis of the claim.

be paid on the same terms as the other creditors as part of the plan of confirmation.[6]  Nirk's claim was disallowed.

### I.  Defendant Has Waived its Right to Invoke<br>Arbitration by Initiating the State Court Action

Florida law generally favors arbitration.   *Roe v. Amica Mut. Ins. Co.,* 533 So.2d 279, 281 (Fla.1988).   However, a long and unbroken line of authority establishes that arbitration can be waived.   Waiver, which is defined as "the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right," applies to the right to arbitrate. *Raymond James Fin. Servs., Inc. v. Saldukas,* 896 So. 2d 707 (Fla.2005); *Roger E. Freilich, D.M.D., P.A. v. Shochet,* 96 So. 3d 1135 (Fla. 4th DCA 2012).   Whether there has been waiver of arbitration should be analyzed in much the same way as in any other contractual context. The essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right. *Raymond James*, *supra at* 711; *citing Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.,* 821 F.2d 772, 774 (D.C.Cir.1987).  "Initiating a lawsuit, or on the part of a defendant, participating in a lawsuit without first seeking arbitration, constitutes an affirmative selection of a course of action which runs counter to the purpose of arbitration." *Beverly Hills*

---

[6]     The order confirming the plan of reorganization has been set aside by this Court based upon circumstances which occurred subsequent to the entry of the order and were unforeseen at the time of its entry.

*Dev. Corp. v. George Wimpey of Florida, Inc.,* 661 So. 2d 969 (Fla. 5th DCA 1995) *citing Rosen v. Shearson Lehman Bros.,* 534 So. 2d 1185 (Fla. 3d DCA 1988), *rev. den.* 544 So.2d 200 (Fla.1989); *Pearson v. Peoples National Bank,* 116 So. 3d 1283 (Fla. 1st DCA 2013);  *See  Grumhaus v. Comerica Securities, Inc.,* 223 F. 3d 648 (7th Cir. 2000)(Court must presume that a party implicitly waived its right to arbitrate when it chooses a judicial forum for the resolution of a dispute).   Such a waiver has occurred in the case at bar.

Although Mesa brought the State Court Action in his individual capacity - and though Nirk was the party to the JVA - Mesa nevertheless was subject to the arbitration provision in the JVA, as a non-signatory, due to his position as an officer and president of Nirk coupled with his payment of an obligation of Nirk under the JVA.  Before this court, Mesa does not contend otherwise as he seeks to invoke the arbitration clause of the JCA.  As the court held in *Koechli v. BIP Intern., Inc.,* 870 So.2d 940, 946 (Fla. 1st DCA 2004), relying on *Ocwen Financial Corp. v. Holman,* 769 So. 2d 481, 483 (Fla. 4th DCA 2000):

> [W]e conclude that Ocwen is a "party" within the meaning of the arbitration clause because it received rights and accepted obligations under the asset purchase agreement.  The individual defendants as well are entitled to the protection of the arbitration clause in the contract signed by OFS because the claims against them arose solely in connection with their activities as officers and directors of that corporation.

6

The holding in *Koechli* is by no means unique.  In *Tenet Healthcare Corp., FMC v. Maharaj,* 787 So. 2d 241 (Fla. 4th DCA 2001), relied upon by the *Koechli* court, Tenet and others, non-signatories to the underlying contract were held to be parties to the underlying contract because the claims against them arose in connection with their activities as directors and officers; *Fi-Evergreen Woods, LLC v. Robinson,* 135 So. 3d 331, 336 (Fla. 5th DCA 2013)("In the absence of a signature, the court looks to a party's words and conduct to determine whether the party assented to the agreement").  Here Mesa paid directly to Banah the money required to be paid by Nirk pursuant to the JVA.  By paying the funds, Mesa agreed to the terms of the JVA including the arbitration provision.

As noted above, Mesa filed suit in state court and never sought in that action to compel arbitration.  By not seeking arbitration to a claim which arose from the JVA, Mesa has waived his right to compel arbitration which waiver carries forward to the case at bar where Banah's claim arises as a result of the JVA.  *See:  The Hillier Group, Inc. v. Torcon, Inc.,* 932 So. 2d 449, 456 (Fla. 2d DCA 2006)("[L]itigation by a party of arbitrable issues might support a finding of the waiver of the right to arbitrate of related issues in a subsequent proceeding."); *Green Tree Servicing, LLC v. McLeod,* 15 So. 3d 682, 691 (Fla. 2d DCA 2009)("Action that is inconsistent with the right to arbitration may occur outside the case file as well as in it."); *Commonwealth Equity Services, Inc. v. Messick,*

7

152 Md. App. 381, 831 A. 2d 1144, 1153 (2003)("[W]e see no error in the court's taking into account what happened in the other consolidated cases in determining whether appellants had waived their right to arbitration in this case."). As noted above, Mesa's claims in the state court proceeding similarly arose from the relationship between Mesa and Banah, pursuant to the JVA, making arbitration appropriate in the State Court Action.[7]

**II.    Defendants Have Waived Their Right to Arbitration
By Participating in the Bankruptcy Proceeding**

On June 28, 2013, the Defendants filed proof of claims in the underlying bankruptcy case [BK ECF Nos. 60-63]. Both NIRK and Mesa filed secured and unsecured claims, each in the amount of $1,449,529.00. This amount, and the basis of the claims, represented monies sought by NIRK and Mesa as reimbursement of payment to Plaintiff for the payments made to Banah as part of Mesa's "investment" in Banah. The proof of claims filed by Defendants are the same claims made by Mesa in the state court suit, which arose from the JVA.[8]

This court should consider Defendants' conduct from the time they filed their proofs of claim. "When a creditor files a proof of claim before the bankruptcy court, this amounts to a civil action to collect the debt, *In re Coxson*, 43 F.3d 189,

---

[7]    For this court's reference, Mesa's state court complaint is attached to the claims of Mesa and Nirk filed in the Chapter 11 proceeding.
[8]    **A**s noted previously, the state court case is attached as Exhibit "A" to the Defendants' proof of claims.

8

193-94 (5th Cir.1995), which arguably invokes the litigation machinery." *Lewallen v. Green Tree Servicing, LLC*, 487 F.3d 1085, 1091 (8th Cir.2007). While the act of filing a proof of claim does not in and of itself constitute a waiver of the creditor's right to invoke arbitration,  *In re Statewide Realty Co*., 159 B.R. 719, 724 (Bankr. D.N.J. 1993), the Defendants had already invoked the litigation process. "A party acts inconsistently with its right to arbitrate if the party '[s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right." *Lewallen v. Green Tree Servicing, LLC*, *supra* at 1090.   Only now do Defendants seek to invoke arbitration, a right they have repeatedly waived.

NIRK and Mesa's claims against the bankruptcy estate are founded upon their state court suit against Banah, which allegations in turn are based upon the Joint Venture Agreement, which contains the arbitration provision that Defendants now seek to invoke. In the underlying bankruptcy case, NIRK and Mesa filed proof of claims on June 28, 2013. Case No. 13-13954, Claim Nos. 60-63. At that moment, the claim was already in dispute, as the claim encompassed pending litigation between the parties, even though objections to the claims had not yet been filed by the creditor. Notwithstanding the dispute, Defendants did not file a request for arbitration of their claims, thereby waiving their right to arbitration in the bankruptcy proceeding.  Since as early as January 31, 2013, the date Mesa filed suit, the parties have been in dispute, and the arbitration provision triggered. As

such, NIRK and Mesa have waived their right to invoke the arbitration provision at this time.

### III. Tortious Interference is Sufficiently Plead

Defendants contend that Plaintiff's Adversary Amended Complaint fails to comply with this Court's Order, entered on July 16, 2014 [Adv. P. ECF No. 24]. Said Order directed Plaintiff to "amend its Complaint and allege when the alleged acts of tortious interference occurred." Plaintiff subsequently filed its Adversary Amended Complaint, which focused the alleged time period of Defendants' tortious interference to "December, 2012 and continuing into 2013." *Id*. at ¶¶16, 22, and 27.

Initially, Defendants had raised multiple grounds in their initial motion to dismiss the adversary complaint.  The only ground accepted by this court was the failure to identify when the tortious interference had occurred.  The amended adversary complaint corrects this deficiency.  Defendants may not raise other grounds to dismiss at this juncture when these grounds were either denied by this court previously or were waived by not being included in the initial motion to dismiss.

In the amended adversary complaint, Plaintiff has alleged that Defendants tortiously interfered with its business contracts to the beginning of 2013 is more

than sufficient at this point in the proceedings to state a claim for relief and alternatively put Defendants on notice to defend against the claims against it.

The complaint's allegations suffice to "raise a reasonable expectation that discovery will reveal evidence" satisfying the pleading requirements of tortious interference, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and to "allo[w] the court to draw the reasonable inference that the defendant is liable," *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Discovery in the instant action is ongoing, with numerous depositions scheduled which will further identify the time and manner in which Defendants' tortious interference occurred. Dismissal at this stage of the proceedings would be improper.

"Discovery *follows* the filing of a well-pleaded complaint. *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 (11th Cir.1997) (quotation omitted). Plaintiff's complaint is well-plead here where, to plead an action for tortious interference under Florida law, a plaintiff's complaint must generally set forth four elements as follows: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the breach of the relationship. *Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126 (Fla.1985).*

Here, Banah alleges in pertinent part:

> 8.    The JVA provided that information disclosed by the Debtor to NMH including data which constituted the essence of the Debtor's business was <u>confidential</u>.   NMH further agreed "<u>not to enter the business</u> of the Debtor based upon this <u>learned knowledge</u> for five (5) years from the date of termination of this agreement."

> 14.    The Debtor realleges and reaffirms paragraphs 1 through 13 of the general allegations of this complaint as if fully set out herein.(¶27)[9]

> 16.    In December, 2012 and continuing into 2013, NMH interfered with the Debtor's contract with Akwa by utilizing the confidential information it received as a result of the JVA to the detriment of The Debtor.

> 17.    NMH contacted Akwa, met with Akwa undersold the Debtor's price, and created doubt with Akwa as to the Debtor's ability to comply with the terms and conditions of the Akwa contract.  (¶29)

> 18.    As a result of NMH's interference with the Akwa contract, Akwa breached the contract.(¶30)

> 19.    As a direct and proximate result of NMH's interference, the Debtor has been damaged. (¶31)

As can be seen by the above cross references, the allegations as to the claims against Mesa are similar.  As alleged in the Adversary Complaint, Banah and Nirk entered into the JVA on or about August 15, 2012, and through this relationship

---

[9]    The paragraphs in parenthesis refer to the allegations of Count IV against Mesa individually.  The Mesa count tracks the Nirk count except that it indicates Mesa is a principal in Mesa (¶28).

the Defendants discovered the existence of Banah's contract with Akwa. (Adv. P.1, at ¶¶7, 10-11). The initial payment for shipments of sugar under the Akwa contract was to be secured by a letter of credit obtained by Akwa, which was subsequently obtained. (Adv. P.1, at ¶13).  The existence of the letter of credit was disclosed by Banah to Nirk Magnate and Mesa as a result of the JVA. (*Id.*).

Defendants contend the counts for tortious interference are not sufficiently plead because: 1) Banah failed to allege "when, where, or in what manner" the interference occurred, and 2) there is no allegation the interference was "intentional and unjustified." (Motion D. ECF No.5 at p.8). Defendants' contentions are wrong for several reasons.  First, the general pleading standards of Rule 8(a), and not the heightened standards of Rule 9(b), apply to pleading tortious interference.[10] *Lockheed Martin Corp. v. Boeing Co*., F.Supp.2d, 2005 WL 729685 *2 (M.D.Fla. 2005); *Cal. Int'l Chem. Co. v. Neptune Pool Serv., Inc.,* 770 F.Supp. 1530, 1537 (M.D.Fla. 1991) (applying Rule 8(a) general pleading standard, rather than Rule 9(b) heightened pleading standard, to a tortious interference claim).   The allegations of the complaint are sufficient to state causes of action against Defendants for tortious interference.

---

[10]     Rule 8 requires, not a specific quantity of facts, but simply "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). "[S]pecific facts are not necessary," and a complaint need only give the defendant fair notice of the claims. *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).

The adversary complaint alleges intentional and unjustified interference on the part of Nirk and its principal, Mesa, because Banah alleged that the Defendants used the confidential information they obtained in connection with and in contravention of the parties' JVA to the detriment of Banah (ECF No.1 at ¶¶ 16, 22, 29, 34).  This is clearly an intentional and unjustified interference with Banah's contract with Akwa which Banah alleges, caused its breach. The JVA provided that information disclosed by the Banah to Nirk including data which constituted the essence of Banah's business was confidential.  Nirk agreed in the JVA "not to enter the business of Banah based upon this learned knowledge for five (5) years from the date of termination of this agreement" (Adv. P. ECF No.1 at ¶8).  Further, Banah explains *how* Defendants interfered with its contracts: when it "undersold Banah's price, and created doubt with Akwa as to Banah's ability to comply with the terms and conditions of the Akwa contract." (Adv. P. ECF No.1 at ¶16).   The interference counts are more than sufficient to give fair notice of Banah's claims and state a claim upon which relief can be granted.

## Conclusion

Based upon the foregoing cases, statutes, and arguments, this Court should deny the Motion to Dismiss and Compel Arbitration in both respects.

## Certificate of Service

14

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualification to practice in this court as set forth in Local Rule 2090-1(A).

Dated: September 15, 2014.                    Respectfully Submitted,


*/s/Jay M. Levy, Esquire*
Jay M. Levy (FBN 219754)
Jay M. Levy, P.A.
9150 South Dadeland Blvd.
Suite 1010
Miami, FL 33156
Telephone:   (305) 670-8100
Facsimile:    (305) 670-4827
Counsel for Debtor/Plaintiff


BAST AMRON LLP
*Counsel to the Debtor in Possession*
SunTrust International Center
One Southeast Third Avenue
Suite 1440
Miami, Florida 33131
Phone: (305) 379-7904
Fax: (305) 379-7905
Email: jbast@bastamron.com
Email: medelboim@bastamron.com

By:   */s/ Morgan B. Edelboim*
        Jeffrey P. Bast (FBN 996343)
        Morgan B. Edelboim (FBN 040955)

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served electronically via the Court's CM/ECF system where available to the parties listed below on this the 30th day of June, 2014.

*/s/Jay M. Levy, Esquire*

## <u>SERVICE LIST</u>

### <u>Via CM/ECF</u>

• Morgan B. Edelboim, Esq. on behalf of Plaintiff Banah International Group, Inc.        medelboim@bastamron.com,        mdesvergunat@bastamron.com; jmiranda@bastamron.com; dtimpone@bastamron.com

• Jay M. Levy, Esquire on behalf of Plaintiff Banah International Group, Inc.; jay@jaylevylaw.com; ryan@jaylevylaw.com;

• John C Webb on behalf of Defendant Nirk Magnate Holding, Corp. johnwebblegal@gmail.com

• John   C   Webb   on   behalf   of   Defendant   Jorge   Mesa,   Sr. johnwebblegal@gmail.com